UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA         :
         :
    -against-         :
         :    NOTICE OF MOTION
AWAIS CHUDHARY,        :
         :    20-cr-135 (CBA)
         :
    Defendant.        :
-------------------------------------------------------X


PLEASE TAKE NOTICE, that the defendant **Awais Chudhary**, by his attorneys

**Samuel Jacobson** and **Sean Larner**, of the Federal Defenders of New York, and

upon the accompanying memorandum of law, before the Honorable Carol B. Amon,

Senior United States District Judge for the Eastern District of New York, for an

Order:

1. Dismissing the indictment against Mr. Chudhary;

    a. Because the indictment fails to state an offense;

    b. Because, no reasonable jury could find Mr. Chudhary guilty of an attempted violation of Section 2339B;

    c. Because it violates the non-delegation doctrine.

2. Granting such other and further relief as the Court may deem just and proper.


DATED:    BROOKLYN, N.Y.
        September 8, 2021

_____/s/
Samuel Jacobson
Sean Larner
Attorneys for Mr. Awais Chudhary
Federal Defenders of New York, Inc.
1 Pierrepont Plaza, 16th Floor
Brooklyn, N.Y. 11201
(212) 417-8739

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

UNITED STATES OF AMERICA      :

    -against-                       :

AWAIS CHUDHARY,          :

                                      20-CR-135 (CBA)

        Defendant.       :

------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF AWAIS CHUDHARY'S MOTION TO DISMISS

SAMUEL I. JACOBSON
    Assistant Federal Defender
SEAN LARNER
    Federal Defenders Fellow
Attorneys for Defendant
AWAIS CHUDHARY
Federal Defenders of New York, Inc.
One Pierrepont Plaza - 16th Floor
Brooklyn, New York 11201
Tel.: (718) 330-1204

CC:    Jacquelyn M. Kasulis, United States Attorney
       Eastern District of New York
       271 Cadman Plaza East
       Brooklyn, New York 11201
       Attn: JONATHAN ALGOR
       Assistant United States Attorney

# <u>Table of Contents</u>

PRELIMINARY STATEMENT ................................................................ 1

STATUTORY FRAMEWORK .............................................................. 2

ARGUMENT ............................................................................ 4

I.   THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO
     STATE AN OFFENSE ............................................................ 4

   A. The Indictment Fails to Allege That Mr. Chudhary Was Attempting to "Work
      Under" the "Direction and Control" of a Terrorist Organization ...................... 5

   B. The Indictment Fails to Sufficiently Specify the Type of Material Support Mr.
      Chudhary Attempted to Provide ................................................ 10

II.  THE ALLEGED CONDUCT DOES NOT, AS A MATTER OF LAW,
     CONSTITUTE ATTEMPTED MATERIAL SUPPORT TO A
     FOREIGN TERRORIST ORGANIZATION .......................................... 11

   A. The Evidence of "Direction and Control" is Insufficient for a Reasonable Jury
      to Find the Requisite Intent .................................................. 13

III. SECTION 2339B(g)(6) IMPROPERLY DELEGATES LEGISLATIVE
     AUTHORITY TO THE SECRETARY OF STATE ...................................... 18

   A. The Constitution Prohibits Congress from Delegating its Legislative Powers,
      Particularly in the Criminal Context ........................................... 18

   B. Section 2339B(g)(6) Violates the Nondelegation Doctrine .......................... 21

   CONCLUSION ........................................................................ 34

## PRELIMINARY STATEMENT

The government has charged Awais Chudhary under 18 U.S.C. § 2339B with attempting to provide material support to ISIS, which is designated by the State Department as a "foreign terrorist organization" ("FTO") under 8 U.S.C. § 1189. Both the indictment charging Mr. Chudhary and the material support statute under which he is charged suffer from a multitude of legal infirmities which require dismissal of the indictment.

*First*, the indictment should be dismissed because it fails to state an offense. It does not allege that Mr. Chudhary sought to work under the direction and control of a foreign terrorist organization, an essential element of the offense. *See* 18 U.S.C. § 2339B(h). Nor does the indictment specify with sufficient particularity the type of support Mr. Chudhary attempted to provide.

*Second*, viewing the evidence in the light most favorable to the government, no reasonable jury could find Mr. Chudhary guilty of an attempted violation of Section 2339B. There is scant evidence that he intended to work under an FTO's "direction or control," and no "substantial step" towards doing so. The indictment should be dismissed for insufficient evidence to make out a crime.

*Third*, section 2339b(g)(6) improperly delegates legislative authority to the secretary of state, and is invalid.

1

## **STATUTORY FRAMEWORK**

The government has charged Mr. Chudhary with violating 18 U.S.C. § 2339B, which makes it a crime punishable by up to 20 years in prison to provide "material support or resources" to a "foreign terrorist organization."

Under Section 2339B(g)(6), the term "foreign terrorist organization" is cross-referenced to the definition at 8 U.S.C. § 1189. Under that statute, the Secretary of State is authorized to designate an organization as a "foreign terrorist organization" if it determines that the organization is: (a) "foreign"; (b) engages in "terrorist activity" or "terrorism"; and (c) "threatens the security of United States nationals" or the "national security of the United States." 8 U.S.C. § 1189(a)(1).

Under Section 2339B(g)(4), the term "material support or resources" is cross-referenced to the definition at 18 U.S.C. § 2339A(b)(1) as follows:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

In 2000, the Ninth Circuit declared the term "personnel" in Section 2339B to be unconstitutionally vague. *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1138 (9th Cir. 2000). In 2004, the court granted en banc rehearing of its earlier decision.

*Humanitarian Law Project v. Dep't of Justice*, 382 F.3d 1154, 1155 (9th Cir. 2004). Three days after reargument in the case, Congress amended § 2339B to further clarify the meaning of the term "personnel" and to attempt to rectify the constitutional infirmity. Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), § 6603, 118 Stat. 3762–3764; *see Holder v. Humanitarian Law Project*, 561 U.S. 1, 12 (2010). The amended section narrows the scope of criminal liability for the provision of "personnel" as a form of material support by providing that:

> (h) Provision of Personnel.—
> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2339B(h).  The Supreme Court has held that "[s]ection 2339B does not criminalize mere membership in a designated foreign terrorist organization. It instead prohibits providing 'material support' to such a group." *Humanitarian Law Project*, 561 U.S. at 18.

3

## ARGUMENT

### I.   THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO STATE AN OFFENSE

The indictment in this case is both over- and under-inclusive. It is under-inclusive because it fails to allege an essential fact – that Mr. Chudhary attempted to work under an organization's direction and control – required for a theory of "personnel." 18 U.S.C. § 2339B(h). Indictment on all the elements of a crime is a "substantial safeguard against oppressive and arbitrary proceedings." *Smith v. United States*, 360 U.S. 1, 9 (1959). Because it fails to allege an element, the indictment must be dismissed. *See United States v. Gonzalez*, 686 F.3d 122, 127 (2d. Cir. 2012) ("An indictment that does not set out all of the essential elements of the offense charged is defective.").

At the same time, the indictment is also over-inclusive because it specifies one form of material support—Mr. Chudhary himself as personnel—while leaving the door open to others, such as "expert advice," "training," "property," or "currency." 18 U.S.C. § 2339A(b)(1); *see also United States v. Awan*, 459 F. Supp. 2d 167 (E.D.N.Y. 2006) (dismissing indictment under § 2339A for failure to specify the kind of material support). The use of the word "including" in the indictment allows the government to pivot to another theory of material support, if its personnel theory were to prove fruitless. This deprives Mr. Chudhary of fair notice of the charges against him. *See Russell v. United States*, 369 U.S. 749, 766 (1962) (discussing a "cryptic form of

4

indictment . . . [that would] require[] the defendant to go to trial with the chief issue undefined"); *id.* at 765 ("It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species – it must descend to particulars." (citation omitted)).

The Sixth Amendment guarantees that a defendant shall be "informed of the nature and cause of the accusation" against him, U.S. CONST. AMEND. VI. The Fifth Amendment protects a defendant's "substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Gonzalez*, 686 F.3d 122, 147 (2d Cir. 2012) (citing *United States v. Miller*, 471 U.S. 130, 140 (1985)). The indictment here fails to meet these requirements.

### A. The Indictment Fails to Allege That Mr. Chudhary Was Attempting to "Work Under" the "Direction and Control" of a Terrorist Organization

The plain language of Section 2339B(h) is that "[n]o person may be prosecuted" under a personnel theory of material support "unless" the person is working under the direction or control of the organization. Without work under the direction or control of a foreign terrorist organization, there is no provision of personnel. Without personnel, there is no material support. And without material support, there is no crime. Because "direction or control" goes to the "very core of criminality" under the statute, it must be pleaded in the indictment. *See Russell*, 369

U.S. at 750. Just as an indictment for tax fraud on a theory of omission must allege a duty to disclose, *United States v. Pirro*, 212 F. 3d 86, 92, and an indictment for antitrust violations on a domestic effects theory must allege a direct effect on domestic commerce, *United States v. Hui Hsiung*, 778 F.3d 738, 756 (9th Cir. 2015), an indictment for material support on a personnel theory must allege direction or control. This is because Section 2339B(h) prevents the government from prosecuting anyone under a personnel theory if the direction or control condition is not met.

Instead of providing the element of direction and control, Mr. Chudhary's indictment misdirected the grand jury to the definitional provision § 2339A(b) without mentioning the "direction and control" requirement of § 2339B(h). "Defects in an indictment *short of* a failure to charge all of the statutory elements do not undermine subject-matter jurisdiction." *United States v. Yousef*, 750 F.3d 254, 259 (2d Cir. 2014) (emphasis added). But the defect here is indeed "a failure to charge all of the statutory elements." *See id.*

Two alternative readings of subsection (h) have been put forward in the district courts. The first is that the provision supplies an affirmative defense, where a defendant would bear the burden of proving at trial that he was not working under the direction or control of an FTO. *See United States v. Ahmed*, No. 15-49 (MJD/FLN), 2015 U.S. Dist. LEXIS 171561, at *4–5 (D. Minn. Sep. 1, 2015). The second is that subsection (h) merely clarifies the definition of "personnel" and is not an element of the offense. *See United States v. Shafi*, 252 F.Supp.3d 787, 795 (N.D. Cal. 2017); *United*

*States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL 9450598, at *8 (E.D.N.Y. Dec. 21, 2015); *United States v. Ludke*, No. 16-CR-175, 2017 WL 9772960, at *6 (E.D. Wis. Dec. 11, 2017). No court of appeals has yet ruled on these interpretations.

Both of these readings rely on erroneous interpretations of the statutory language and legislative history of § 2339B(h). Indeed, the district courts have acknowledged their lack of certainty regarding the role played by subsection (h). *See, e.g.*, *Ludke*, 2017 WL 9772960, at *6 ("[the defendant's] arguments have some appeal"); *Pugh*, 2015 WL 9450598, at *8 ("In making this determination, the court recognizes that plausible alternative readings of the statute are defensible.").

Subsection (h) does not create an exception to the crime defined in subsection (a). *Compare* § 2339B(h) (creating the requirement that "[n]o person may be prosecuted . . . *unless*" there is direction or control), *with* § 2339B(j) (creating the exception that "[n]o person may be prosecuted . . . *if*" they are acting on instructions from the U.S. government) (emphasis supplied). Subsection (h) creates a positive condition that must be met before prosecuting conduct as criminal. Among the universe of people who might appear to be supporting an FTO, *only* those who "work under" the "direction or control" of the FTO are considered "personnel" for the purposes of material support.

Without the direction or control requirement, § 2339B would criminalize constitutionally protected conduct. The statute itself makes clear that "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its

7

goals or objectives shall not be considered to be working under the . . . organization's direction and control." § 2339B(h).

Finally, the statutory language itself makes clear that Subsection (h) is an essential element that must be pleaded in the indictment. Section 2339B(h) provides in full that:

> **No person may be prosecuted** under this section in connection with the term "personnel" **unless** that that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2339B(h) (emphasis added). The only way to give effect to Congress' language that "no person may be *prosecuted* … unless" is if subsection (h) is an element that a grand jury must find for the government to return an indictment. The plain meaning of the word 'prosecution' in the statute is that no case may be *initiated* without alleging the element of "direction and control."[1] Moreover, the term

---

[1] Dictionary definitions of "prosecution" indicate that the term refers to the initiation and maintenance of a criminal action. Black's Law Dictionary defines "prosecution" as "a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with a crime." *Prosecution*, BLACK'S LAW DICTIONARY, *at* https://thelawdictionary.org/prosecution/#:~:text=A%20criminal%20action%3B%20a%20 0proceeding,a%20person%20charged%20with%20crime (last accessed Aug. 27, 2021).

8

"prosecution" elsewhere in Chapter 113B (Terrorism) is consistently used to refer to threshold issues that must be resolved at the outset of a criminal action, in contrast to the term "conviction" which is used in the context of trial and sentencing.[2]

Because the indictment returned against Mr. Chudhary did not plead all the essential elements it must be dismissed.

---

And the Oxford English Dictionary defines "prosecution" as "the process of being officially charged with a crime in court." *Prosecution*, OXFORD ENGLISH DICTIONARY, *at* https://www.oxfordlearnersdictionaries.com/us/definition/english/prosecution (last accessed Aug. 27, 2021).
Thus, to initiate a prosecution under § 2339B, "direction and control" must be alleged as an element in the indictment.

[2] For example, the jurisdictional subsections of §§ 2339(b) and 2339A(a) both provide that "[a] violation of this section may be *prosecuted* in any Federal judicial district in which the underlying offense was committed, or in any other Federal judicial district as provided by law." Because a Court must have jurisdiction for a criminal action to be initiated, Congress used the word "prosecuted" to emphasize that the charging document must itself allege the jurisdictional basis for the charged offense. Same for other threshold issues, as in (1) the question of conflict of laws which must be addressed at the preliminary stage of a criminal action, *see* 18 U.S.C. § 2332b(d)(2) ("In a *prosecution* under this section that is based upon the adoption of State law, only the elements of the offense under State law, and not any provisions pertaining to criminal procedure or evidence, are adopted.);" (2) the question of Attorney General certification, *see* § 2332(d) ("No prosecution for any offense described in this section shall be undertaken by the United States except on written certification of the Attorney General . . . ."); or (3) the question of whether the Secretary of State had approved the provision of material support, *see* § 2339B(j) ("No person may be prosecuted under this section . . . if the provision of that material support or resources to a foreign terrorist organization was approved by the Secretary of State.").

## B. The Indictment Fails to Sufficiently Specify the Type of Material Support Mr. Chudhary Attempted to Provide

An indictment should be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The indictment must "contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 97, 117. If an indictment describes the offense in the words of the statute, "those words . . . themselves [must] fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Carll*, 105 U.S. 611, 612; *see also United States v. Cruikshank*, 92 U.S. 542, 558 (1875) (where the definition of the offense includes generic terms, "it must descend to particulars"); *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995)("implied, necessary elements, not presented in the statutory language, must be included"). The indictment must "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Walsh*, 194 F.3d at 44 (citation omitted).

Failure to hold an indictment to this constitutional standard would force a court to "guess as to what was in the minds of the grand jury [and] deprive the defendant of a basic protection which the . . . grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell*, 369 U.S. at 770.

"Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Id.* at 764.

Here, the indictment does not limit the types of material support that the government alleges Mr. Chudhary provided. It reads as follows:

> In or about August 2019, within the Eastern District of New York and elsewhere, the defendant AWAIS CHUDHARY did knowingly and intentionally attempt to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), **including**: services and personnel, including himself, to a foreign terrorist organization[.]

Through its use of the word "including" to describe the theory of liability, the government failed to meet the requirement of specificity outlined in *Russell*. Instead, the government merely recited the statutory language, thereby failing to apprise Mr. Chudhary of which theory of material support they intend to prove. Because the indictment does not limit the types of material support that the government alleges Mr. Chudhary provided, it must be dismissed.

## II.    THE ALLEGED CONDUCT DOES NOT, AS A MATTER OF LAW, CONSTITUTE ATTEMPTED MATERIAL SUPPORT TO A FOREIGN TERRORIST ORGANIZATION

Even if the Court finds that the indictment properly stated an offense, it still must be dismissed because no reasonable jury could find that the facts alleged constitute attempted material support of terrorism.

11

To find attempted material support in the form of personnel, a jury would need to conclude that Chudhary (1) attempted (2) knowingly (3) to work under the direction or control or to organize, manage, supervise, or otherwise direct the operation of (4) a designated FTO, (5) knowing that it was a designated FTO or engaged in terrorism. *See* 18 U.S.C. § 2339B. The indictment and complaint fail to allege facts upon which a reasonable jury could find the substantial step needed for attempt, the element of direction or control, and the mens rea requirement.

A defendant may challenge the sufficiency of the evidence in a pretrial motion if "the government has made what can fairly be described as a full proffer of the evidence it intends to present a trial." *United States v. Alfonso*, 143 F.3d 772, 776-777 (2d Cir. 1998). Here, as far as the defense is aware, the allegations in the complaint, the search warrant affidavits, and the discovery materials proffer all evidence relevant to the material support charge. Viewing the evidence in the light most favorable to the government, *see United States v. Delvecchio*, 816 F.2d 859, 862 (2d Cir. 1987), the facts suggest that Mr. Chudhary expressed views in favor of ostensibly radical ideology, attempted to obtain a knife at the urging of an undercover FBI agent, and conducted surveillance. There was no plan to conduct any actual attack. Because there is no evidence that Mr. Chudhary worked under the direction and control of ISIS, and because he did not take a substantial step towards providing material support. the government cannot carry its burden

12

Specifically, no reasonably jury could find the two elements necessary to make out a crime of attempt: the intent to commit a crime, and a substantial step toward the commission of that crime. The Second Circuit has adopted a two-step inquiry to determine whether conduct rises to the level of attempt:

> Initially, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime he is charged with attempting. Then, the defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime, conduct strongly corroborative of the firmness of the defendant's criminal intent.

*United States v. Stallworth*, 543 F.2d 1038, 1040 (2d Cir. 1976). Here, there is no evidence that Mr. Chudhary intended to join, fight for, or otherwise work under the direction and control of ISIS. Further, there is no evidence of a substantial step because there were no concrete acts that were "strongly corroborative of the firmness of the defendant's criminal intent." *Id.*

## A. The Evidence of "Direction and Control" is Insufficient for a Reasonable Jury to Find the Requisite Intent

The mens rea requirement for the crime of material support is twofold. The defendant must (1) "knowingly provide[ ] material support or resources to a foreign terrorist organization" and (2) "have knowledge that the organization is a designated terrorist organization . . . , that the organization has engaged or engages in terrorist activity . . . , or that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a)(1). "Material support" is defined as, among other things, the provision of

13

"personnel," including oneself. 18 U.S.C. § 2339A(b)(1). "Designated terrorist organization" is defined by reference to Section 219 of the Immigration and Nationality Act. "Terrorist activity" is defined by reference to 8 U.S.C. § 1182(a)(3)(B)(iii) as any of a list of activities including hijacking, kidnapping, assassination, and the use of biological weapons or explosives, or any "threat, attempt, or conspiracy" to do one of those things, so long as it is unlawful in the place where it is done or would be unlawful in the United States. "Terrorism" is defined in 22 U.S.C. § 2656f(d)(2) as "premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents."

The Model Penal Code provides that:

> A person acts knowingly with respect to a material element of an offense when:
> (i)      if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> (ii)     if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

Model Penal Code §2.02; *see also United States v. Bailey*, 444 U.S. 394, 404 (1980).

The facts alleged in this case, in the light most favorable to the government, reveal a teenager who was curious but deeply confused about the Islamic State—a teenager who fantasized but never acted "with the kind of culpability otherwise required for the commission of the crime he is charged with attempting," *see Stallworth*,

14

543 F.2d at 1040, because he did not attempt to work under the direction and control of ISIS. The evidence is insufficient to establish the mens rea required by § 2339B.

As alleged in the complaint, "In his communications with UC-1 and UC-2, CHUDHARY repeatedly expressed support for ISIS[.]" Compl. ¶ 5. However, that proposition is substantiated by one statement which itself is vague and only tenuously connected to ISIS. Specifically, the government cites a statement made in a message in which Mr. Chudhary claimed to have given "ba'yah to Ameer al-Mu'mineen." *Id.* ¶ 10.

By itself, the statement that Mr. Chudhary gave "ba'yah to Ameer al-Mu'mineen" (i.e. pledged allegiance to Ameer al-Mu'mineen) could not supply a reasonable jury with the evidence to find that Mr. Chudhary worked under the direction and control of ISIS. *Id.* Although in the complaint, Special Agent Yockel states that he is "aware that Ameer al-Mu'mineen refers to the leader of ISIS, Abu Bakr al Baghdadi," *id*, the phrase is nearly as old as Islam itself. "Ameer al-Mu'mineen" is a title in Arabic that translates to "Commander of the Faithful." It is an ancient title like "Sheikh," and was adopted initially by Umar, the second caliph, as well as his successors.[3]

At most, the evidence shows that Mr. Chudhary, at the impressionable age of 19, told someone online who he thought was an ISIS supporter that he had given

---

[3] *Emir*, ENCYCLOPEDIA BRITANNICA, Oct. 5, 2016, *at* https://www.britannica.com/topic/emir#ref261464 (last accessed Aug. 31, 2021).

ba'yah to Ameer al-Mu'mineen. Standing alone, the phrase falls far short of an express pledge of support to ISIS, and therefore shows that Mr. Chudhary was acting "entirely independently" of any foreign terrorist organization. 18 U.S.C. § 2339B(h). Moreover, Mr. Chudhary never spoke to an ISIS recruiter, never communicated with an ISIS handler or facilitator, and had no contact whatsoever with any members of ISIS aside from the undercovers who posed as ISIS supporters. Mr. Chudhary was not working or attempting to work under the direction and control of any organization.

## B.  The Evidence is Insufficient to Constitute a "Substantial Step" Towards Providing Material Support

Based on the allegations in the complaint as well as the discovery produced to date, no reasonable jury could find that Mr. Chudhary took a "substantial step" towards providing material support to ISIS. A substantial step must be "some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime." *United States v. Manley*, 632 F.2d 978, 988 (2d Cir. 1980). It "must be something more than mere preparation." *United States v. Martinez*, 775 F.2d 31 (2d Cir.1985). The Second Circuit has expressed concern "that attempt liability, with its accompanying heavy penalties, not be imposed for remote preparatory acts insufficiently corroborative of a firm criminal purpose." *United States v. Ivic*, 700 F.2d 51, 67 (2d Cir. 1983), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994). Because the provision of oneself as personnel under the material support statute requires working under the direction and

16

control of a foreign terrorist organization, *see supra* Section II.A, an attempt to complete that crime must include some effort toward working under the organization's direction or control. *See United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008) ("The requirement of proving a substantial step serves to distinguish people who pose real threats from those who are all hot air.").

Here, the government alleges that Mr. Chudhary conversed with an undercover agent posing as "an online supporter of ISIS"—but not posing as an actual member of ISIS. Compl.    ¶ 5. Additionally, Mr. Chudhary is alleged to have said that he gave "ba'yah to Ameer Al-Mu'mineen." *Id.* ¶ 10. Taken together, talking to an online supporter of ISIS and saying one pledged themselves to "The Commander of the Faithful" could not supply a jury with sufficient evidence to find that Mr. Chudhary took a substantial step towards working under the direction and control of a foreign terrorist organization. Furthermore, even if we assume that Mr. Chudhary had the intent to provide material support and to do so while working under the direction and control of ISIS, he did not take any steps that were "more than mere preparation." *United States v. Martinez*, 775 F.2d at 31.

Indeed, other convictions for attempted material support upheld on appeal illustrate the distance between the alleged conduct here and the criminal conduct proscribed by the material support statute. *See, e.g., United States v. Kaziu*, 559 Fed. App'x. 32 (2d Cir. 2014) (unpublished) (upholding substantial step where defendant traveled to Egypt and worked with an al-Shabaab facilitator to arrange travel to

17

Somalia, and fellow traveler testified to their intent to fight). Thus, the evidence of taking a "substantial step" towards providing material support while working under the direction and control of ISIS is insufficient as a matter of law, and the indictment must be dismissed.

## III.   SECTION 2339B(g)(6) IMPROPERLY DELEGATES LEGISLATIVE AUTHORITY TO THE SECRETARY OF STATE

The power to decide if countless private citizens around the world are subject to criminal liability in the United States is an immense one. The Constitution vests that power exclusively in Congress. But under 18 U.S.C. § 2339B(g)(6), Congress tied the criminal material support statute to the definition of a foreign terrorist organization in 8 U.S.C. § 1189, which expressly delegates the authority to designate FTOs to the Secretary of State.  Under this statutory scheme, the State Department, rather than Congress, has the unguided and unchecked power to decide which organizations are or are not subject to criminal liability under Section 2339B.  This is plainly unconstitutional.

### A. The Constitution Prohibits Congress from Delegating its Legislative Powers, Particularly in the Criminal Context

The authority to legislate is entrusted solely to Congress. U.S. Const. Art. I §§ 1, 8. "Congress manifestly is not permitted to abdicate or transfer to others the legislative functions" with which it is vested. *Panama Refiniaugustinng Co. v. Ryan*, 293

U.S. 388, 421 (1935). This "nondelegation doctrine is rooted in the principle of separation of powers . . . ." *Mistretta v. United States*, 488 U.S. 361, 371 (1989).

Because of its focus on protecting individual liberty, the nondelegation doctrine is enforced most rigorously in the criminal context.  Several specific constitutional provisions safeguard the separation of powers in the criminal context. While Congress may single out parties to a civil suit, *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1327 (2016), the Bill of Attainder Clause, U.S. Const. art. I, § 9, prevents Congress from singling out persons for criminal punishment. This protection is "an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature." *United States v. Brown*, 381 U.S. 437, 442 (1965).

The Framers recognized that, with "criminal subjects," Congress should "leave as little as possible to the discretion of those who are to apply and to execute the law." James Madison, *The Report of 1800*, *in* 14 *The Papers of James Madison* 266, 307, 324 (Robert A. Rutland et al. eds., 1983). As a result, the Court has made clear that "defining crimes" is a "legislative" function, *United States v. Evans*, 333 U.S. 483, 486 (1948), and that Congress cannot delegate "the inherently legislative task" of determining what conduct "should be punished as crimes." *United States v. Kozminski*, 487 U.S. 931, 949 (1988); *see also United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) ("It is the legislature . . . which is to define a crime, and ordain its punishment.").

This special prohibition on congressional delegation of criminal lawmaking power is reflected in the Court's void-for-vagueness doctrine. Vague criminal statutes are prohibited both because individuals are entitled to sufficient notice as to what constitutes a crime and to prevent legislatures from "abdicat[ing] their responsibilities for setting the standards of the criminal law." *Smith v. Goguen*, 415 U.S. 566, 574-75 (1974); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (vague laws "impermissibly delegate[] basic policy matters to policemen"); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921) (invalidating vague criminal statute as delegation to define crimes). "In that sense, the [void-for-vagueness] doctrine is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).

The Court has not "exactly drawn" the line separating "legislative" from executive or judicial powers, *see Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825), but one thing is clear: the power to enact generally applicable, binding rules of private conduct is "legislative." *See Yakus v. United States*, 321 U.S. 414, 424 (1944); *see also The Federalist No. 75*, at 450 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("The essence of the legislative authority is to enact laws, or, in other words, to prescribe rules for the regulation of the society.").

While the nondelegation doctrine does not prevent Congress from "obtaining the assistance of its coordinate Branches," it can do so only if it provides clear

20

guidance. *Id.* at 372-73. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not forbidden delegation of legislative power.'" *Id.* at 372 (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928)).

In both *Panama Refining Co.* and *Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Supreme Court held that Congress had unconstitutionally authorized the Executive to make laws because "Congress had failed to articulate any policy or standard that would serve to confine the discretion of the authorities to whom Congress delegated power." *Mistretta*, 488 U.S. at 374, n.7. Similarly, in Sections 1189 and 2339B(G)(6), Congress failed to articulate any policy to guide the Secretary of State in exercising this delegated authority to designate FTOs. Because Section 2339B(G)(6) grants the Secretary of State unfettered discretion to determine who is subject to criminal liability without an "intelligible principle" to guide her, it plainly violates the nondelegation doctrine.

**B. Section 2339B(g)(6) Violates the Nondelegation Doctrine**

Section 2339B(g)(6) violates the Constitution under any formulation of the nondelegation doctrine. First, the delegation is invalid under an originalist understanding of the nondelegation doctrine because the statute transfers to the Secretary of State what can only be described as legislative authority. Second, the

21

statute is unconstitutional because it fails to provide a sufficiently intelligible principle to cabin and direct the Secretary of State's exercise of the delegated powers.

1. Section 2339B(g)(6) Impermissibly Delegates Quintessentially "Legislative" Powers

Section 2339B(g)(6) grants, in the context of the material support statute, the Secretary of State quintessentially legislative powers: it allows her to prescribe who is subject to criminal sanctions, potentially governing the conduct of hundreds of thousands of private individuals, both in the United States and abroad, including Mr. Chudhary. It affects the substantive liberty interests of these individuals in the most profound way.

Under an originalist interpretation of the Constitution, the legislative nature of these delegated powers ends the inquiry and requires this Court to invalidate the delegation. *See, e.g.*, *Dep't of Transp. v. Ass'n of Am. R.R.*, 135 S. Ct. 1225, 1246 (2015) (Thomas, J., concurring) ("[T]he original understanding of the federal legislative power . . . require[s] that the Federal Government create generally applicable rules of private conduct only through the constitutionally prescribed legislative process."); *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825) ("It will not be contended that Congress can delegate . . . powers which are strictly and exclusively legislative. . . . [Those powers] must be entirely regulated by the legislature itself."); *Field v. Clark*, 143 U.S. 649, 692 (1892) ("That congress cannot delegate legislative power to the

president is a principle universally recognized as vital to the integrity and maintenance

of the system of government ordained by the Constitution.").

2. Section 2339B(g)(6)'s Delegation to the Secretary of State Fails the
   Intelligible Principle Test

In addition to violating originalist constitutional principles governing

delegations of power, Section 2339B(g)(6) fails the Court's prevailing "intelligible

principle" test because it fails to provide sufficiently clear guidance on fundamental

policy question.

a. To state an Intelligible Principle, a Statute Must Provide Sufficiently
   Clear Guidance on Fundamental Policy Questions

While affirming that Congress cannot delegate its legislative powers, the

Supreme Court has recognized that "separation-of-powers principle[s] . . . do not

prevent Congress from obtaining the assistance of its coordinate Branches." *Mistretta*

*v. United States*, 488 U.S. 361, 372 (1989). The Court's modern jurisprudence has been

"driven by a practical understanding that in our increasingly complex society, replete

with ever changing and more technical problems, Congress simply cannot do its job

absent an ability to delegate power under broad general directives." *Id.*

The Court developed the "intelligible principle" test to evaluate such

congressional delegations of power. Under this test, if "Congress shall lay down by

legislative act an intelligible principle to which the person or body [to whom power is

delegated] is directed to conform, such legislative action is not a forbidden delegation

23

of legislative power." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).

When Congress lays down a sufficiently clear guiding principle, the Court has construed the powers delegated not to be "legislative," even if they involve some degree of discretion, because Congress itself has made all of the fundamental policy decisions—i.e., it has done the "legislative" work. *See J.W. Hampton, Jr., & Co.*, 276 U.S. at 407. As the Court explained in *J.W. Hampton, Jr. & Co.*, when Congress delegates pursuant to an "intelligible principle" it "is not an exact statement" to claim that the Executive is exercising "legislative power" because such "power has already been exercised legislatively by the body vested with that power." *Id.*; *accord Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001); *United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 85 (1932) ("[T]he legislative power of Congress cannot be delegated . . . . But Congress may declare its will, and, after fixing a primary standard, devolve . . . the 'power to fill up the details' . . . .").

In addition to being clear enough to guide the Executive, this intelligible principle must enable courts to determine whether the delegate has acted within the bounds of the delegated authority and in accordance with Congress's expressed will. *See, e.g.*, *Yakus v. United States*, 321 U.S. 414, 423, 425 (1944) (courts must be able to see "in an appropriate proceeding" that there is a "substantial basis" for the executive action and that the "will of Congress has been obeyed"); *Indus. Union Dep't AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 686 (1980) (Rehnquist, J., concurring) (intelligible

24

principle requirement "ensures that courts . . . reviewing the exercise of delegated legislative discretion will be able to test that exercise against ascertainable standards").

The intelligible principle requirement thus preserves "both sets of constitutional checks—judicial and political—on the exercise of coercive authority in a 'government of laws.'" Laurence H. Tribe, *American Constitutional Law* 985 (3d ed. 2000). It permits a court to police delegations to ensure the delegate does not exceed Congress's grant of authority and follows Congress's will. And by requiring Congress to provide adequate guidance in the first instance, the intelligible principle test ensures that Congress itself makes the critical legislative policy decisions.

Under the intelligible principle test, the amount of required congressional guidance depends on the "extent and character" of the power conferred. *See J.W. Hampton, Jr., & Co.*, 276 U.S. at 406; *see also Whitman*, 531 U.S. at 475 ("[T]he degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred."). Congress itself must regulate certain "important subjects," but may more freely delegate to the executive in areas of "less interest." *Wayman*, 23 U.S. (10 Wheat.) at 43. Thus, while Congress "must provide substantial guidance on setting air standards that affect the entire national economy," far less guidance is necessary when the Executive determines relatively minor matters, like the definition of "country elevators." *Whitman*, 531 U.S. at 475.

Congress must speak with particular clarity when it confers powers that "touch[] constitutionally sensitive areas." Tribe, *supra* at 987. "[A]ction . . . in areas of

25

doubtful constitutionality[] requires careful and purposeful consideration by those responsible for enacting and implementing our laws." *Greene v. McElroy*, 360 U.S. 474, 507 (1959); *see also Kent v. Dulles*, 357 U.S. 116, 129 (1958) ("If . . . 'liberty' is to be regulated, it must be pursuant to the law-making functions of the Congress."); Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315, 317(2000) (noting that the nondelegation doctrine's "most convincing claim" is "that certain highly sensitive decisions should be made by Congress").

When transferring powers that touch upon these areas, Congress must provide sufficiently clear directives to show that it deliberated and made the required "legislative judgment." *United States v. Robel*, 389 U.S. 258, 275 (1967) (Brennan, J., concurring) ("The area of permissible indefiniteness [of a delegation] narrows, however, when the regulation invokes criminal sanctions and potentially affects fundamental rights"); *see also Bilski v. Kappos*, 561 U.S. 593, 649 (2010) (Stevens, J., concurring) ("[A]t the 'fringes of congressional power,' 'more is required of legislatures than a vague delegation to be filled in later[.]'") (quoting *Barenblatt v. United States*, 360 U.S. 109, 139-40 (1959) (Black, J., dissenting)). This principle is of course manifest in the requirement that Congress—not the Executive—decide the scope of criminal laws.

      b. <u>Given the Character and Significance of the Power Conferred by Section 2339B(g)(6), and the Absence of Guidance, This Delegation is Unconstitutional</u>

Section 2339B(g)(6) defines the term "terrorist organization" as "an organization designated as a terrorist organization under Section 219 of the Immigration and Nationality Act."  Section 219 of the INA, as amended by AEDPA, is codified at 8 U.S.C. § 1189, and provides that the Secretary of State, "in consultation with the Secretary of the Treasury and the Attorney General," may designate an organization as an FTO if she finds: (1) it is foreign; (2) it is engaged in "terrorist activity" or "terrorism," or has the "capability and intent" to do so; and (3) "the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States."  8 U.S.C. § 1189(a)(1), (d)(4).[4]

At its heart, the Section 2339B(g)(6) cross-reference to Section 1189 permits the Secretary of State to designate as foreign terrorist organizations any foreign organizations engaged in terrorist activity or terrorism.  The circularity of this Congressional guidance falls far below what is required to pass muster under the nondelegation doctrine.

---

[4] Moreover, Section 1189(a)(8) specifically precludes a criminal defendant from challenging the Secretary of State's designation:

> If a designation under this subsection has become effective under paragraph (2)(B) a defendant in a criminal action or an alien in a removal proceeding shall not be permitted to raise any question concerning the validity of the issuance of such designation as a defense or an objection at any trial or hearing.

27

The point is not that DOJ's prosecutions under the Secretary of State's historical FTO designations represent good or bad policy. The point is that the Constitution requires Congress—not the Secretary of State—to make these sorts of fundamental legislative choices and for Congress's choices to be reflected in the guidance it provides in any delegation.

The lack of guidance attending this delegation makes Section 2339B(g)(6) akin to the statutes the Supreme Court invalidated in *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935), and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935). Both cases involved laws backed by criminal sanctions, and that fact, coupled with the overall significance of the delegated authority, weighed in the Court's holdings that Congress had not sufficiently constrained Executive power in its delegations. *See Fahey v. Mallonee*, 332 U.S. 245, 249 (1947) (distinguishing *Panama Refining* and *Schechter Poultry* because they "dealt with delegation of a power to make federal crimes of acts that never had been such before").

In *Panama Refining*, 293 U.S. at 406, the Court struck down a statutory provision "authoriz[ing] [the President] to prohibit the transportation in interstate and foreign commerce of petroleum" products produced in excess of state production quotas, so called "hot oil." The Court noted that whether oil could be transported in interstate commerce was "obviously [a question] of legislative policy." *Id.* at 415. It therefore looked to the statute to see whether Congress had properly "set up a standard for the

President's action; [or] . . . required any finding by the President in the exercise of the authority to enact the prohibition." *Id.*

The statute did not do so. It did not state "whether or in what circumstances or under what conditions" the President was to ban hot oil, nor provide any criteria to govern his decision. *Panama Refining*, 293 U.S. at 415. The statute instead endowed the President with "unlimited authority to determine the policy and to lay down the prohibition, or not to lay it down, as he may see fit," unguided by any "standard or rule." *Id.* at 415, 418. Thus, "[i]nstead of performing its lawmaking function," Congress had "transfer[red] that function to the President." *Id.* at 430.

Similarly, in *Schechter Poultry*, 295 U.S. at 529, the Court struck down a statute authorizing the President to adopt a code of industrial conduct that fostered "fair competition." The Court held that "[i]n view of the scope of that broad declaration, and of the nature of the few restrictions that are imposed, the discretion of the President in approving or prescribing codes . . . is virtually unfettered." *Id.* at 541-42. It invalidated Congress's attempt to "abdicate or transfer to others the essential legislative functions with which it is vested." *Id.* at 529.

The dearth of guidance in Section 2339B(g)(6), and in the statutes struck down in *Schecter Poultry* and *Panama Refining*, stand in marked contrast to statutes where the Court has upheld congressional delegations to the Executive in the criminal lawmaking context.

29

In *Touby v. United States*, 500 U.S. 160, 168-69 (1991), for example, the Supreme Court ruled that Congress had provided sufficient guidance in permitting the Drug Enforcement Agency to temporarily schedule, and thereby criminalize the possession or distribution of, new drugs under the Controlled Substances Act (CSA). Before exercising this power, Congress required the DEA to find that scheduling a new drug was "necessary to avoid an imminent hazard to the public safety." *Id.* at 163 (citing 21 U.S.C. § 811(h)). In making that determination, Congress further required the DEA to consider three factors: the drug's "history and current patterns of abuse"; "[t]he scope, duration and significance of abuse"; and "[w]hat, if any, risk there is to the public health." *Id.* at 166 (citing 21 U.S.C. §§ 811(c)(4)-(6), 811(h)(3)).  Congress also made clear that the DEA needed to make a panoply of other specific findings. *Id.* at 166-67 (citing § 202(b), 21 U.S.C. § 812(b)).

The Court determined that even if "greater congressional specificity [regarding a delegation] is required in the criminal context," the detailed directives in the CSA satisfied these requirements because they "meaningfully constrain[ed]" the Secretary of State's discretion. *Touby,* 500 U.S. at 166. Indeed, the statute at issue in *Touby* resembles some of the earliest delegations approved by the Court, which conditioned executive action on the making of specific factual findings. *See, e.g., Field v. Clark,* 143 U.S. 649, 693 (1892) (holding President was not "making laws" where delegation required him to act if he found a particular fact).

30

The Supreme Court most recently revisited its nondelegation jurisprudence in June 2019.  The case, *Gundy v. United States*, 139 S. Ct. 2116 (2019), involved a provision of the Sex Offender Registration and Notification Act ("SORNA") that confers on the Attorney General the authority to "specify the applicability" of SORNA's registration requirement to "sex offenders convicted before" the date of SORNA's enactment.  In a 5-3 decision, the Court held that construed narrowly the relevant statutory section required the Attorney General simply to apply SORNA "to all pre-Act offenders as soon as feasible."  *Gundy*, 139 S. Ct. at 2123.  It did not empower the Attorney General to create, remove, or otherwise revise registration requirements for these offenders.  Accordingly, the Court held that the delegation in *Gundy* passed muster because it directed the Attorney General to "implement" Congress' legislation, *id.* at 2130, not to itself legislate.  The delegation was "distinctly small-bore." *Id.*

Unlike the statute at issue in *Gundy*, Section 2339B(g)(6) does far more than "implement [Congress'] programs."  *See id.* at 2130.  The instant statute effectively endows the Secretary of State with the power to write her own criminal code.  *See id.* at 2131 (Gorsuch, J., dissenting).  Section 2339B(G)(6) contains no goal specifically relating to the delegation; no criteria to constrain the Secretary of State's exercise of the delegated power; and no standards by which a court can evaluate any executive action.

The question before this Court is not whether a defendant can raise at trial whether the FTO designation was proper, as was the issue in *United States v. Ahmed*, 94 F. Supp. 3d 394 (E.D.N.Y. 2015) (SLT), or whether Section 1189 violates the nondelegation doctrine because designations are not subject to judicial review, as in *United States v. Taleb-Jedi*, 566 F. Supp. 2d 157 (E.D.N.Y. 2008) (BMC).  In *Taleb-Jedi*, Judge Cogan did address, briefly, the wider constitutional question, opining that FTO designation delegation is permissible because "Congress has established detailed procedures to designate organizations as FTOs and it retains the power to revoke such a designation when made."  *Id.* at 172.  But a "detailed procedure" is not the same as the constitutionally required "substantial guidance," and the power to override agency action by statute does not save otherwise unlawful delegation of legislative authority, because agency action can always be undone by statute.  The question is whether "procedure" is a constitutionally valid replacement for actual guidance when Congress seeks to give away its legislative power.  It is not.

To be clear, our issue is also not with the idea that Congress can delegate the designation of FTOs to the Secretary of State—although that might be impermissible too—but with the practice, implemented through Section 2339B(g)(6), that those same agency-determined FTO designations are in turn used to support the proscription of private conduct without additional Congressional action.  In other words, we are not challenging Section 1189 itself, or any of the myriad non-criminal statutes or programs that depend on Section 1189.  Whereas matters relating to

32

foreign affairs and the military are the executive branch's traditional domain, in the context of material support laws the designation of FTOs takes on a legislative valence, because it affects not only foreign policy determinations but also the regulation and criminalization of private conduct.

Under Section 2339B, which criminalizes the provision of material support to an FTO, the Section 1189 delegation grants broad and plenary power on the Secretary of State without substantial guidance. It is thus unconstitutional under *Whitman*. *See* 531 U.S. at 475. The delegation involves exactly the sort of significant and constitutionally sensitive decisions that require careful legislative deliberation and especially clear legislative guidance.

\*       \*       \*

In enacting Section 2339B(g)(6), Congress improperly transferred its legislative power to the Secretary of State without telling her how, or even whether, to exercise it. The nondelegation doctrine thus requires the Court to invalidate this definitional section of the material support statute. Doing so will reaffirm basic separation-of-powers principles, thereby protecting individual liberty, preserving democratic accountability, and vindicating the rule of law. By tying Section 2339B(g)(6) to the plenary delegation authorized at 8 U.S.C. § 1189, Congress unconstitutionally conferred unguided and unchecked power to create criminal liability upon an executive agency.

33

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the motion and dismiss the indictment against Mr. Chudhary.

DATED:    BROOKLYN, N.Y.
             September 8, 2021

                                        _____/s/_____
                                      Samuel Jacobson
                                      Sean Larner
                                      Attorneys for Mr. Awais Chudhary
                                      Federal Defenders of New York, Inc.
                                      1 Pierrepont Plaza, 16th Floor
                                      Brooklyn, N.Y. 11201
                                      (212) 417-8739