1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                        20-CR-135(CBA)
3    UNITED STATES OF AMERICA,
                                        United States Courthouse
4                                       Brooklyn, New York

5             -versus-                  February 14, 2022
                                        10:00 a.m.
6    AWAIS CHUDHARY,

7             Defendant.

8    ------------------------------x

9          TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
                 BEFORE THE HONORABLE CAROL B. AMON
10                   UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                Eastern District of New York
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              BY:  JONATHAN ALGOR, ESQ.
                                     ELLEN SISE, ESQ.
15                              Assistant United States Attorneys

16   For the Defendant:        FEDERAL DEFENDERS OF NEW YORK
                                BY:  SAMUEL JACOBSON, ESQ.
17                                   NORA HIROZAWA, ESQ.

18

19   Court Reporter:           Rivka Teich, CSR, RPR, RMR, FCRR
                                Phone:  718-613-2268
20                              Email:  RivkaTeich@gmail.com

21   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
22

23

24

25

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

2

                          STATUS CONFERENCE

 1              (Video/Telephone conference.)

 2              THE COURTROOM DEPUTY:  Criminal cause for a status

 3    conference, 20-CR-135, United States vs. Chudhary.

 4              May the parties state your name for the record,

 5    starting with the Government?

 6              MR. ALGOR:  Good afternoon, your Honor.  Jonathan

 7    Algor and Ellen Sise for the United States.

 8              THE COURT:  Good afternoon.

 9              MR. JACOBSON:  Good afternoon, your Honor.  Sam

10    Jacobson and Nora Hirozawa, Federal Defenders for Awais

11    Chudhary, who is on the videoconference with us.

12              THE COURT:  Good afternoon.

13              Mr. Jacobson, let me just ask you initially, does

14    your client agree to proceed with audio and video?  He can see

15    everyone except for me, is that acceptable for your client in

16    that form?

17              MR. JACOBSON:  Yes, your Honor.

18              THE COURT:  Have you discussed that with him

19    previously?

20              MR. JACOBSON:  On prior occasions, yes.

21              THE COURT:  Mr. Chudhary, is it acceptable to you

22    that we proceed in this fashion?  You can see the parties and

23    hear the Court, as opposed to coming together courthouse.

24              THE DEFENDANT:  That's fine with me, your Honor.

25              THE COURT:  I can't understand you.

                    *Rivka Teich CSR RPR RMR FCRR*
                       *Official Court Reporter*

STATUS CONFERENCE

1    THE DEFENDANT:  I said that's fine with me, your

2  Honor.

3    THE COURT:  Okay.  Mr. Jacobson, you have an

4  application -- (audio interruption) -- filed with the Court

5  you want -- (audio interruption) -- on adjournment.

6    MR. JACOBSON:  Yes, your Honor.  I had a little bit

7  of trouble hearing you just now.  I think the Court is

8  inquiring about our application of the adjournment of the

9  trial.

10    THE COURT:  Yes.

11    MR. JACOBSON:  We do think that it's important for

12  us to have a little bit of extra time so we can meet with

13  Mr. Chudhary and better prepare a defense on his behalf.  So

14  we are still asking for the adjournment of the March date.

15    THE COURT:  You said that you weren't able to meet

16  with him between this conference and the next conference, and

17  this particular conference -- between the last conference and

18  this conference.

19    MR. JACOBSON:  That's right, Judge.  I spoke to

20  Mr. Chudhary very briefly on Thursday.  We are going to try to

21  start meeting with him at the MDC, assuming that it's open for

22  legal business.  Given the number of moving parts and things

23  that we have to accomplish before trial, we think it's to his

24  benefit to have the extra time.

25    THE COURT:  We talked about setting a trial date in

STATUS CONFERENCE

1   October of last year when we set this trial date.  What do you

2   need to do now?  You said that you have to get an expert, that

3   would be an expert both for trial and for the purposes of

4   furthering plea negotiations?

5              MR. JACOBSON:  That's right, Judge.  We're waiting

6   on two finalized expert reports, both of which will require

7   additional meetings with Mr. Chudhary.  We're in the process

8   of trying to reschedule some of the visits.

9              I think given the number of weeks that we have

10  before trial it's not sufficient time, either for the

11  mitigation or to provide expert disclosure and a report to the

12  Government if those experts were to testify at trial.

13             We would also -- in terms of preparing Mr. Chudhary

14  for his potential testimony at trial, and a number of other

15  things that we would have to do with him during in-person

16  visits, including I would add, the discovery review, the crux

17  of which is under protective order so we have to meet with

18  Mr. Chudhary in-person to review it.

19             THE COURT:  Well, the problem is the Government has

20  the problem with one of its main witnesses, which as I

21  remember was in April; is that right Mr. Algor?

22             MR. ALGOR:  That's correct, your Honor.  The UC will

23  be unavailable until the fall.

24             THE COURT:  Mr. Jacobson, that's a long time for

25  your client to wait in prison in connection with this

STATUS CONFERENCE

1    proceeding.  If I grant your application, you have to

2    understand it would be until the fall.  It's not a question of

3    adjourning it for a couple of weeks or a month or something

4    like that, it would be a longer adjournment.

5            MR. JACOBSON:  We understand the constraints on

6    trial dates as well as on the Government's witness for trial.

7    But what we would say is that we would request the earliest

8    possible date that works for the Court and for the

9    Government's witnesses.

10            THE COURT:  You cut in and out.  You want to just

11    state the last thing that you said again.

12            MR. JACOBSON:  We understand the constraints, your

13    Honor.  I think in the end we would request the earliest date

14    possible where the Government's witness is available and Court

15    is available for a trial.

16            THE COURT:  This isn't in essence the Government's

17    problem because the Government is prepared to go to trial at

18    the end of March date.  Is that correct, Mr. Algor, you're

19    prepared to go to trial; is that correct?

20            MR. ALGOR:  Yes, your Honor.

21            THE COURT:  And the problem would be that if we

22    adjourn that date then it becomes a problem of an unavailable

23    witness.  The Government is now ready to go to trial, does

24    your client understand that?

25            MR. JACOBSON:  We believe he does, your Honor.

STATUS CONFERENCE

1          THE COURT:  Mr. Chudhary, do you understand that the

2     Government is prepared and ready to go to trial in March.  If

3     I were to grant your counsel's application, the trial would be

4     adjourned until perhaps of end of August or later because of

5     their witness having a child.  Do you understand that?

6          THE DEFENDANT:  Yes, I understand that, your Honor.

7     I understand that, your Honor.

8          THE COURT:  Do you still want to the Court to

9     adjourn the trial?

10          THE DEFENDANT:  I think we don't have like another

11     choice because one of the witnesses is having a baby, like you

12     mentioned, your Honor, so yeah.

13          THE COURT:  It's acceptable to you that it would be

14     adjourned until either late August or the fall, is that

15     acceptable to you?

16          THE DEFENDANT:  Yes, it's acceptable to me.  I said,

17     yes, it's acceptable to me.

18          THE COURT:  Mr. Jacobson, is a certain disposition

19     dependent, or at least one of the considerations, is the

20     expert psychological affidavit; is that correct?

21          MR. JACOBSON:  Yes, your Honor, that's right.  Of

22     course if there is a disposition we would let your Honor know

23     as soon as we reach one.

24          THE COURT:  But we have to deal with that issue

25     sooner than later.  What is your plan on pursuing that?

7

STATUS CONFERENCE

1          I want -- (audio interruption) -- as I said

2   repeatedly, the only reason that I'm raising this is the trial

3   date in this case.  Now we've got a problem where we have

4   reserved this March date and you tell me you can't be ready

5   and that throws the whole system into disarray.  I don't

6   want -- (audio interruption) -- I want to settle this if there

7   is going to be a disposition sooner.  This is not going to be

8   raised two weeks before the trial date that we set.

9          So what do you need to do to further those

10  discussions?

11         MR. JACOBSON:  With an adjournment, we're not going

12  to let this linger.  We'll still be full-speed ahead with the

13  mitigation and preparing the expert reports, both to the

14  Government for discussions and also to make expert notice to

15  the Government for trial.  So we're still going to deal with

16  this in as a prompt a manner as we can.

17         As I mentioned, we're going to try to see

18  Mr. Chudhary tomorrow at MDC, if it's open for legal

19  visitations.  And we're in the process of scheduling

20  additional expert meetings with Mr. Chudhary, so those reports

21  can be completed and disclosed as soon as possible.

22         THE COURT:  Assuming that you have the expert meet

23  with Mr. Chudhary, what is your estimate for how long it takes

24  to prepare a report?

25         MR. JACOBSON:  I'd say 30 days from the time they

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

STATUS CONFERENCE

1   finish their meeting with Mr. Chudhary.  I can't speak exactly

2   to the experts' schedules, but that is my estimate.

3         THE COURT:  How many meetings do they need with

4   Mr. Chudhary in the facility?

5         MR. JACOBSON:  I think only one or two more

6   meetings, Judge.

7         THE COURT:  Have they had meeting with him already?

8         MR. JACOBSON:  Yes, one of them has.  The other

9   still needs a couple of meetings.  For one of these experts it

10  is actually a supplemental report, creating an addendum of a

11  report prepared about a year ago.

12        THE COURT:  This report has been turned over to the

13  Government?

14        MR. JACOBSON:  Yes, your Honor.

15        THE COURT:  What type of expert report is that?

16  What is that report about?

17        MR. JACOBSON:  They are both forensic psychological

18  reports.

19        THE COURT:  Which you intend to use at trial?  You

20  intend to call these experts at trial?

21        MR. JACOBSON:  Yes, your Honor.

22        THE COURT:  So the Government has one expert.  What

23  is the name of that expert?

24        MR. JACOBSON:  Clemente Vega, your Honor.

25        THE COURT:  So you're going to give them a

STATUS CONFERENCE

1    supplemental to that report.  But that person has to meet one

2    more time with Mr. Chudhary?

3              MR. JACOBSON:  One or two more times.

4              THE COURT:  The second expert, why do you need two

5    experts what?  Is the difference with the second expert?

6              MR. JACOBSON:  One expert is a forensic

7    psychologist.  The other expert is an adolescent

8    neuropsychologist who deals with adolescent cognition.

9              THE COURT:  Is this the research dealing with the

10   juvenile brain or the brain not being formed yet, is that what

11   that expert is about?

12             MR. JACOBSON:  Yes, he deals with --

13             THE COURT:  I'm sorry, can you hear me?

14             MR. JACOBSON:  Yes, more or less, yes.  That's

15   correct.

16             THE COURT:  Why would that be a jury issue?  You're

17   not seeking a psychiatric defense, are you?  Or is that a

18   mitigation expert?

19             MR. JACOBSON:  Both, your Honor.  It's mitigation

20   for discussions, and if we were ever before your Honor for

21   sentencing in this case.  But it also goes to the intent

22   element.

23             THE COURT:  I can't hear you.

24             MR. JACOBSON:  It goes to intent at trial.

25             THE COURT:  So both experts you would envision

STATUS CONFERENCE

1    testifying at trial?

2              MR. JACOBSON:  We believe so.

3              THE COURT:  Do you have another expert that deals

4    with the nature of ISIS or is that the first expert?

5              MR. JACOBSON:  That's the third expert, your Honor.

6    We're not prepared to speak today as to who that will be.

7    There is a third expert who we would call at trial.

8              THE COURT:  We have to get ready for trial.  You

9    have to give the Government expert reports.  We can't have

10   experts just dribbling in here at the last minute.  What is

11   the status of that expert?  There is someone who is to counter

12   what the Government's expert says?

13             MR. JACOBSON:  Yes, your Honor.  I can't say

14   definitively who that will be.  We're still in discussions

15   about that internally.

16             What I can say is if the Court wants to set a

17   deadline for defense experts' disclosures, we would be happy

18   to comply with that.  I think that's something -- because I

19   understand the Court's concerns about not wanting to again be

20   in a crunch period as the trial approaches, especially with

21   this adjournment, I think if the Court were to set a date 60

22   or 90 days out for final defense expert disclosures, we would

23   be able to make that happen.

24             THE COURT:  Mr. Algor, you have provided all your

25   experts, correct?

STATUS CONFERENCE

1          MR. ALGOR:  Yes, your Honor.  Then again, though, by

2     this date moving, depending on what the date is, I have to

3     make sure the expert is available.  He was available for the

4     current trial date.  Without a date or --

5          THE COURT:  Everybody seems to be cutting in and

6     out.  Can you -- (audio interruption) -- what did you say?

7          MR. ALGOR:  I don't know the availability of the

8     current expert for the fall.

9          THE COURT:  Here's what I'm going to order, all of

10    the defense expert reports be provided to the Government

11    within 45 days of today.

12          How significant are those reports to any ongoing

13    plea negotiations?

14          MR. JACOBSON:  From our perspective, I think they

15    are pretty significant, Judge.  As I mentioned in my recent

16    filings, they are reports that we discussed with the

17    supervisor at the U.S. Attorney's Office, and the Government

18    is expecting to have those.  And I think they'll inform any

19    decisions that are made.

20          THE COURT:  Let me ask, Mr. Algor.  Is the

21    Government awaiting these reports in terms of their plea

22    negotiations or not?

23          MR. ALGOR:  It's part of the appeal, your Honor.

24    Mr. Jacobson had represented that these reports would be

25    significant and asked for my supervisors to review those in

STATUS CONFERENCE

1  making a final determination.  So I can't say that the front

2  office's -- I don't know the front office's decision regarding

3  this appeal until we get those reports.

4          THE COURT:  So they are waiting -- they are agreeing

5  to review those reports before they --

6          MR. ALGOR:  Yes, your Honor, that's correct.

7          THE COURT:  Those reports will be provided.  The

8  Government will -- (audio interruption).

9          THE COURTROOM DEPUTY:  You're cutting out in and out

10  very bad.  I don't think anyone heard you very clearly.

11          THE COURT:  Ms. Campbell, can you hear us?

12          THE COURTROOM DEPUTY:  I can hear you now.

13          THE COURT:  I asked you if 45 days would be

14  effectively be March 28?

15          MR. JACOBSON:  We'll make it happen, Judge.

16          THE COURT:  By March 28 those reports have to be

17  filed, and I'm not giving any extensions for that.  This

18  should have been, in my view, done a long time ago.  I'll set

19  down a status conference on this case on April 14.  I take it

20  by that time, Mr. Algor, the Government can make its decision?

21          MR. ALGOR:  Yes, your Honor.

22          THE COURT:  I want to put this -- (audio

23  interruption).

24          MR. ALGOR:  I heard your question.  Yes, the

25  Government will be prepared to have a final answer regarding

STATUS CONFERENCE

1    disposition by April 14, the next status conference.

2               THE COURT:  I'm going to set a trial down for

3    August 29.  Is that available?

4               THE COURTROOM DEPUTY:  Yes, Judge, August 29.

5               THE COURT:  Ms. Campbell?

6               THE COURTROOM DEPUTY:  August 29 is available.  Can

7    you hear me?

8               THE COURT:  I couldn't hear you until just now.

9               We'll set it down for August 29.

10              I'll exclude time under the Speedy Trial Act on a

11   number of grounds.

12              First of all, that there are ongoing plea

13   negotiations.

14              Second, I'll indicate that this is also done with --

15   this is an application that the -- (audio interruption) -- the

16   trial.  That the Government is ready to go to trial, so it's

17   one that is being done by defense, that's another ground for

18   excluding time.

19              Also, by his request he has made a Government

20   witness unavailable.  So on the unavailability of a key

21   witness is another ground for excluding time.

22              And in the interest of justice and outweighs the

23   best interest of the public and the defendant in the speedy

24   trial.

25              One thing that we have talked about here is the need

14

STATUS CONFERENCE

1    for an anonymous jury and questionnaires.

2             MR. ALGOR:  We can file that whenever the Court

3    wants us to.

4             THE COURT:  Because of the problems with jury

5    selection, file your counter-request a week from today.  Okay?

6             MR. ALGOR:  We'll do that, Judge.

7             THE COURT:  With regard to the selection of the

8    anonymous jury, let me ask Mr. Algor -- or let me tell

9    Mr. Algor and Mr. Jacobson -- if we can do this perhaps on a

10   modified basis, where the potential juror gives their last

11   name and borough.  I don't see why the defendant would be

12   disadvantaged by that, Mr. Jacobson.

13            MR. JACOBSON:  It still poses the issue of knowing

14   far less about the jurors than we would ordinarily be able to.

15            THE COURT:  Like the difference between Emily and

16   Rose?  I mean, you get so much information from a

17   questionnaire.  I wouldn't do a questionnaire in this case if

18   it wasn't for the nature of the case.  You get so much more

19   information from a questionnaire than you do from a regular

20   voir dire.  I think the parties, as a practical matter,

21   recognize that.  Eliminating a first name, seems to the Court,

22   would solve both concerns.  It would still give information

23   about a last name; and then it would be more difficult, if

24   anyone were inclined to try and trace a juror, for instance.

25            Mr. Algor, do you object to that procedure?

STATUS CONFERENCE

1          MR. ALGOR:  No, I don't, your Honor.  I think you're

2    right, your Honor, that the juror questionnaire -- having just

3    done this this past summer -- gives more information than you

4    would get in a normal voir dire setting.

5          THE COURT:  So Mr. Jacobson, do you seriously object

6    to that?

7          MR. JACOBSON:  No, your Honor.  Our request is the

8    questionnaire.  I think that's right, that we could get more

9    information than we would otherwise.

10          THE COURT:  If you all can agree on a questionnaire,

11   fine.  If not, you'll provide me with your request in two

12   weeks from today, okay.

13          What we'll do is on the 29th we'll have to bring the

14   jurors in, give them the questionnaires.  Have them duplicate

15   it that week.  Bring them back the following week from the

16   29th.  And then go forward with jury selection at that point.

17          Does everybody understand the procedure,

18   Mr. Jacobson?

19          MR. JACOBSON:  Yes, your Honor.

20          THE COURT:  Mr. Algor?

21          MR. ALGOR:  Yes, your Honor.

22          THE COURTROOM DEPUTY:  Sorry to interrupt you.  You

23   said bring the jurors in on the 29th, that's the actual trial

24   date.  We may have to do it a week prior to the 29th.

25          THE COURT:  I can't hear you.

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

STATUS CONFERENCE

1          THE COURTROOM DEPUTY:  Can you hear me now, Judge?

2          THE COURT:  I can't hear you.

3          THE COURTROOM DEPUTY:  Can you hear me better now?

4    Hello?

5          THE COURT:  I can hear you.

6          THE COURTROOM DEPUTY:  Can you hear me now?

7          THE COURT:  Yes, I can hear you now.

8          THE COURTROOM DEPUTY:  The 29th is the actual start

9    date for selection.  We need to bring the jurors in a week

10   prior to the 29th.

11         THE COURT:  I don't see why.  If it's our jurors, I

12   don't see why we can't take that jury pool that's ours on the

13   29th.  We'll need to bring in a pool just for us and we'll

14   handout the questionnaires, then come back and do the

15   selection the following week.  I think that works out.  Just

16   talk to the jury office about that.

17         THE COURTROOM DEPUTY:  I'll do that.  Thank you.

18         THE COURT:  We need a select group of jurors just

19   for us on the 29th.

20         THE COURTROOM DEPUTY:  Okay, Judge.

21         THE COURT:  Any other issues that we need to take up

22   today?  I don't want to be hearing about problems right before

23   the trial date.

24         MR. JACOBSON:  I may have missed it, the time for

25   the April 14 status conference?

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

STATUS CONFERENCE

1          THE COURT:  Can we do 10:00 o'clock?

2          THE COURTROOM DEPUTY:  10:00 a.m. is fine.

3          THE COURT:  Okay.  Any other issues that we need to

4    address?

5          MR. ALGOR:  Not from the Government, your Honor.

6    Thank you.

7          MR. JACOBSON:  Nothing, your Honor.

8          THE COURT:  No discovery issues or anything that are

9    unresolved that you need worked out?

10          MR. JACOBSON:  There are a couple outstanding

11    issues, but the parties are working on it.  I don't think we

12    need the Court's intervention.

13          THE COURT:  Okay.  All right then.

14          THE COURTROOM DEPUTY:  Judge, one last thing.  I

15    think originally you said for the jury questionnaires to be

16    due February 21, then you said two weeks, the 28th.  I want to

17    clarify, which date you want the parties to submit that?

18          MR. JACOBSON:  We'd ask for the two weeks so we have

19    time in the interim to see if we can come to a resolution

20    internally with the Government.

21          THE COURT:  The 28th is fine.

22          THE COURTROOM DEPUTY:  Thank you.

23          THE COURT:  Anything else, Ms. Campbell?

24          THE COURTROOM DEPUTY:  No, Judge, that's all.

25          THE COURT:  We will never do this again.

18

STATUS CONFERENCE

1          THE COURTROOM DEPUTY:  I'm not sure why everyone is

2    having a bad connection, but this one wasn't the best.

3          THE COURT:  If there is nothing further, all right.

4          Just for the defendant's sake, the next time we'll

5    be in court.  It won't be this much distraction.  I know it's

6    difficult for you as well, Mr. Chudhary.  It will be in court

7    and it will be better.

8          Thank you everyone.

9          MR. JACOBSON:  Thank you, Judge.

10         MR. ALGOR:  Thank you, Judge.

11         (Whereupon, the matter was concluded.)

12                    *    *    *    *    *

13   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

14

15   /s/ Rivka Teich
     Rivka Teich, CSR RPR RMR FCRR
16   Official Court Reporter
     Eastern District of New York

17

18

19

20

21

22

23

24

25

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*