1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,       : 20-CR-135(RML)
                                :
                                :
                                :
        -against-               : United States Courthouse
                                : Brooklyn, New York
                                :
                                :
AWAIS CHUDHARY,                 : Friday, August 26, 2022
                                : 10:00 a.m.
            Defendant.          :
                                :
                                :

- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

For the Government: BREON S. PEACE, U.S. ATTORNEY
                    EASTERN DISTRICT OF NEW YORK
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                    BY:  JONATHAN E. ALGOR, IV
                         ELLEN SISE
                         Assistants United States Attorney

For the Defendant:   FEDERAL DEFENDERS OF NEW YORK
                         One Pierrepont Plaza - 16th Floor
                         Brooklyn, New York  11201
                     BY: NORA K. HIROZAWA, ESQ.
                         SAMUEL JACOBSON, ESQ.


Court Reporter:      LINDA A. MARINO, OFFICIAL COURT REPORTER
                     225 Cadman Plaza East/Brooklyn, NY 11201
                     lindacsr@aol.com

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription.

Proceedings                                          2

1          THE LAW CLERK:  This is criminal cause for a

2     pleading, United States v. Chudhary, 20-CR-135.

3          Please state your appearances for the record

4     beginning with the Government.

5          MR. ALGOR:  Good morning, your Honor.  Jonathan

6     Algor and Ellen Sise for the United States.

7          THE COURT:  Good morning.

8          MR. JACOBSON:  And good morning, your Honor.  Sam

9     Jacobson and Nora Hirozawa, Federal Defenders, for Awais

10    Chudhary, who is present next to us.

11         THE COURT:  Good morning.

12         Good morning, Mr. Chudhary.

13         THE DEFENDANT:  Good morning.

14         THE COURT:  Can you just say your name for the

15    record, please?

16         THE DEFENDANT:  Awais Ali Chudhary.

17         THE COURT:  Thank you.

18         THE LAW CLERK:  I'll swear in the Defendant.

19         Mr. Chudhary, could you please raise your right

20    hand?

21         Do you solemnly swear or affirm that the statements

22    you are about to give in this pleading shall be the truth, the

23    whole truth, and nothing but the truth?

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  Who will be speaking primarily for the

Proceedings                                                    3

1    defense, today?

2           MR. JACOBSON:  I will, your Honor.

3           THE COURT:  All right.  So, Mr. Jacobson, what would

4    your client like to do today?

5           MR. JACOBSON:  He'd like to change his plea to

6    guilty to the sole charge in the indictment.

7           And it's not pursuant to a plea agreement.

8           THE COURT:  All right.  I have in front of me a

9    consent form in which, Mr. Chudhary, you have agreed to have

10   me, a magistrate judge, hear your guilty plea and make a

11   recommendation to Judge Amon whether to accept it.

12          Do you remember signing this document?

13          THE DEFENDANT:  Yeah.

14          THE COURT:  And I see there's a signature here above

15   the name of the Defendant.  Is that your signature?

16          THE DEFENDANT:  Yes, that's my signature.

17          THE COURT:  And are you agreeing voluntarily to have

18   me hear the plea and make a recommendation to Judge Amon?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Nobody forced you or threatened you or

21   made you any promises to induce you to do that?

22          THE DEFENDANT:  No.

23          THE COURT:  I'm going to ask you a lot of questions.

24   The questions are for your benefit as well for the Court's

25   benefit.  If there's anything that you don't understand, just

Proceedings                                4

1   please let me know, and I'll explain it.

2            If at any time you would like to discuss the case or

3   your answer to a question with either of your lawyers, feel

4   free to do that.  You can do that confidentially by just

5   pushing the button on your microphone.

6            Okay?

7            THE DEFENDANT:  I will.

8            THE COURT:  You're under oath, which means that you

9   have to answer my questions honestly and completely.  Again,

10  if you have any questions about them, please ask.  But if you

11  don't answer them honestly and completely, you could be

12  prosecuted for perjury.

13           Do you understand?

14           THE DEFENDANT:  Yes, I understand.

15           THE COURT:  What is your full name?

16           THE DEFENDANT:  Awais Ali Chudhary.

17           THE COURT:  How old are you?

18           THE DEFENDANT:  Twenty-two.

19           THE COURT:  What is the last level of schooling that

20  you finished?

21           THE DEFENDANT:  One semester of college when I was

22  19 years old.

23           THE COURT:  Do you speak any other languages than

24  English?

25           THE DEFENDANT:  Not really fluently, but yeah.

```
                         Proceedings                        5

 1              (Pause in proceedings; record read.)

 2              THE DEFENDANT:  Not really fluently, but kind of.

 3   Like, Urdu, I speak it a little bit.

 4              THE COURT:  I understand.  So, English is your most

 5   fluent language.

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  And you speak that fluently.

 8              THE DEFENDANT:  Yeah.

 9              THE COURT:  Are you now or have you recently been

10   under the care of a doctor or a psychiatrist?

11              THE DEFENDANT:  No.

12              THE COURT:  In the past 24 hours, have you taken any

13   medicine or pills of any kind?

14              THE DEFENDANT:  No, I haven't.

15              THE COURT:  In the past 24 hours, have you taken any

16   narcotic drugs or drunk any alcoholic beverages?

17              THE DEFENDANT:  No.

18              THE COURT:  Have you ever been -- I have to ask this

19   question of everyone:  Have you ever been hospitalized or

20   treated for narcotic addiction?

21              THE DEFENDANT:  No.

22              THE COURT:  For alcoholism?

23              THE DEFENDANT:  No.

24              THE COURT:  For a mental or emotional problem?

25              THE DEFENDANT:  No.
```

```
                      Proceedings                    6
```

1          THE COURT:  Is your mind clear now?

2          THE DEFENDANT:  I think so, yeah.

3          THE COURT:  Do you understand why you're here and

4    what's happening here today?

5          THE DEFENDANT:  Yeah, I do.

6          THE COURT:  Again, that's a question I ask of

7    everyone.

8          I have a few questions to ask of your attorneys, and

9    then I'll come back to you.

10         Mr. Jacobson, have you discussed this matter fully

11   with your client?

12         MR. JACOBSON:  Yes, we have, your Honor.

13         THE COURT:  Does he understand the rights he would

14   be waiving by pleading guilty?

15         THE DEFENDANT:  He does.

16         THE COURT:  Is he capable of understanding the

17   nature of these proceedings?

18         MR. JACOBSON:  Yes, he is.

19         THE COURT:  Do you have any doubt as to his

20   competence to plead at this time?

21         MR. JACOBSON:  No, your Honor.

22         THE COURT:  Have you advised him of the possible

23   maximum and minimum sentence, fine, and other penalties that

24   could be imposed if he pleads guilty?

25         MR. JACOBSON:  We have.

Proceedings                                           7

1          THE COURT:  Have you discussed with him the

2    sentencing guidelines, how they work, given him an estimate of

3    his guideline range?

4          MR. JACOBSON:  Yes, Judge.

5          THE COURT:  Have you advised him that there's no

6    guarantee what his guideline range will be or what his

7    sentence will be at this time?

8          MR. JACOBSON:  Yes, we have.

9          THE COURT:  Have you advised him that if he is not a

10   citizen -- and I have no idea whether he is or not -- a guilty

11   plea could result in deportation?

12         MR. JACOBSON:  Yes.

13         And he is a citizen.

14         THE COURT:  Are you satisfied that he understood all

15   of your discussions?

16         MR. JACOBSON:  Yes, I am.

17         THE COURT:  So, Mr. Chudhary, did you hear what your

18   lawyer said?

19         MR. JACOBSON:  I did.

20         THE COURT:  And have you discussed -- first of all,

21   do you agree with everything that he said?

22         THE DEFENDANT:  Yeah, I do.

23         THE COURT:  And have you discussed your case with

24   him fully?

25         THE DEFENDANT:  Yes.

```
                         Proceedings                    8

 1            THE COURT:  Are you satisfied to have your lawyers
 2   represent you?
 3            THE DEFENDANT:  Yeah, I am.
 4            THE COURT:  So, I have a copy of the indictment,
 5   which is the document that charges you formally in this case.
 6            Have you had a chance to read the indictment?
 7            THE DEFENDANT:  Yeah, I have.
 8            THE COURT:  Do you have a copy of the indictment
 9   either here or somewhere else?
10            THE DEFENDANT:  Elsewhere I do.
11            THE COURT:  Have you discussed the indictment with
12   your lawyer?
13            THE DEFENDANT:  Yeah, I have.
14            THE COURT:  Do you understand it fully?
15            THE DEFENDANT:  Yeah.
16            THE COURT:  Are there any questions you have about
17   it now before we go any further?
18            THE DEFENDANT:  No, not really.
19            THE COURT:  So, I'm going to ask, Mr. Jacobson, are
20   you satisfied that Mr. Chudhary understands the charges
21   against him?
22            MR. JACOBSON:  Yes, your Honor.
23            THE COURT:  Will the Government briefly explain
24   those charges?
25            MR. ALGOR:  Yes, your Honor.
```

Proceedings                                                    9

1                  To the one sole count, attempting to provide

2      material support to a terrorist organization, statute

3      18 U.S.C. 2339(b), that in August 2019, within the Eastern

4      District of New York, the Defendant, knowingly and

5      intentionally, attempted to provide material support,

6      providing himself, to a foreign terrorist organization.  And

7      in this case, that foreign terrorist organization is ISIS.

8                  THE COURT:  And when you say "attempt," how do you

9      understand that in terms of the charge?

10                 MR. ALGOR:  So that under the statute, the Defendant

11     attempted to commit the predicate statute 2339(b), which is

12     providing material support to ISIS, and then took a

13     substantial step in furtherance of doing so.

14                 THE COURT:  Thank you.

15                 Mr. Chudhary, do you understand what Mr. Algor said?

16                 THE DEFENDANT:  Yeah.

17                 THE COURT:  So, any questions about anything I've

18     said so far?

19                 THE DEFENDANT:  No, I don't think so.

20                 THE COURT:  So, I mentioned earlier that this

21     proceeding is both for your benefit and for the Court's

22     benefit.  I want to make sure that you understand your rights

23     because there are a number of rights that you have now that a

24     guilty plea will take away; in other words, you'll be giving

25     them up by pleading guilty.  I'm sure you've had discussions

Proceedings                                              10

1   with your lawyers about those rights, but I just want to go

2   through the main ones again.

3           Do you understand that you have a right to plead not

4   guilty?

5           THE DEFENDANT:  Yeah.

6           THE COURT:  And do you understand that if you

7   continue to plead not guilty, it's your right under the

8   Constitution and laws of this country to a speedy and public

9   trial by jury, with the help of your lawyers, on the charges

10  contained in the indictment that we just discussed?

11          THE DEFENDANT:  Yeah.

12          THE COURT:  And do you understand that if at any

13  time during this process you cannot afford to retain an

14  attorney, the Court will appoint a lawyer, as you have lawyers

15  appointed now, to advise you and represent you at every stage

16  of this case, all the way through trial, and, if there's a

17  conviction, through an appeal, and this will all be at no cost

18  to you; do you understand?

19          THE DEFENDANT:  Yeah, I understand.

20          THE COURT:  Do you understand that if you decided to

21  go to trial, you would be presumed to be innocent; the

22  Government would have to overcome that presumption and prove

23  your guilt by what we call "competent evidence" that's

24  admissible in court and by proof beyond a reasonable doubt?

25          THE DEFENDANT:  Yes.

Proceedings                                          11

1        THE COURT:  You would not have to present any

2   evidence or prove that you're innocent.

3        THE DEFENDANT:  I understand.

4        THE COURT:  So that even if you did everything the

5   Government has accused you of, if the Government cannot prove

6   to a jury beyond a reasonable doubt that you're guilty, the

7   jury would have a duty to find you not guilty.

8        THE DEFENDANT:  Yeah, I understand.

9        THE COURT:  Any questions about anything so far?

10        THE DEFENDANT:  I don't think so.

11        THE COURT:  During your trial, if you decide to go

12   to trial, the Government would have to bring its witnesses to

13   court, they would have to testify in your presence, your

14   lawyers would have the right to cross-examine the Government's

15   witnesses, to object to the Government's evidence, to present

16   witnesses on your behalf, and to compel witnesses whom you

17   wish to call to appear in court, and to offer evidence in your

18   defense; do you understand?

19        THE DEFENDANT:  Yeah.

20        THE COURT:  If you go to trial, you would have a

21   choice:  You would have the right to testify, if you chose to

22   do so; but if you choose not to, you have the right to remain

23   silent.

24        Under the Fifth Amendment to the United States

25   constitution, you have a right to remain silent and not to

1    incriminate yourself.  And, so, if you decided to go to trial

2    but not to testify, the trial judge, Judge Amon, would

3    instruct the jurors they couldn't hold that against you or

4    assume that you're guilty because you didn't speak up in your

5    own defense.

6              THE DEFENDANT:  I understand.

7              THE COURT:  Any questions about anything so far?

8              THE DEFENDANT:  No.

9              THE COURT:  If you plead guilty and the Court

10   accepts your guilty plea, you'll be giving up your

11   constitutional right to a trial, the right to remain silent,

12   and the other rights that I've just explained.  There will be

13   no trial of any kind, no right to appeal from the judgment of

14   guilty.  The Court will simply enter a judgment that you're

15   guilty based on what you say here today.

16             Do you understand?

17             THE DEFENDANT:  I understand.

18             THE COURT:  And if you do plead guilty, I'm going to

19   have to ask you some questions to make sure that you truly are

20   guilty.  You'll have to answer me and admit your guilt.  And

21   in doing that, you'll be giving up your right to remain silent

22   and not to incriminate yourself.

23             THE DEFENDANT:  All right.  I understand.

24             THE COURT:  Again, any questions?

25             THE DEFENDANT:  No.

Proceedings                    13

1          THE COURT:  Are you willing to give up your right to

2     trial and the other rights I've just discussed?

3          THE DEFENDANT:  Yeah.

4          THE COURT:  So, this plea is not pursuant to an

5     agreement, correct?

6          MR. ALGOR:  That's correct, your Honor.

7          THE COURT:  Does the Government have an estimate as

8     to what the guideline range might be in this case?

9          MR. ALGOR:  Yes, your Honor.  The Government

10    estimates a total offense level of 38 and the guidelines range

11    is 360 to life assuming the Defendant is Criminal History

12    Category VI with the application of the terrorism enhancement.

13    Because the statutory maximum sentence is 20 years, the

14    effective guidelines range is 240 months.

15         THE COURT:  Mr. Jacobson, have you explained your

16    estimate to your client?

17         MR. JACOBSON:  Yes, we've explained both the

18    Government's estimate and our estimate, which differs to the

19    extent that we believe that the terrorism enhancement is not

20    applicable here.

21         THE COURT:  Is there anything more you would like to

22    put on the record or is there no need to?

23         MR. JACOBSON:  Nothing further, Judge.

24         THE COURT:  Okay.  So, Mr. Chudhary, do you have any

25    questions about what either attorney just said?

Proceedings                                            14

1       THE DEFENDANT:  No, I don't.

2       THE COURT:  I'm going to ask the Government once

3  again to explain what it believes the possible maximum and

4  minimum sentence, fine, and other punishments would be if he

5  did plead guilty.

6       MR. ALGOR:  Yes, your Honor.

7       Under the statute, the maximum term of imprisonment

8  is, as I mentioned, 20 years.  There is no minimum term of

9  imprisonment for 18 U.S.C. 2339(b).

10       As to a maximum fine, that's $250,000.

11       And within supervised release, there's a maximum

12  supervised release term of life to follow any term of

13  imprisonment.  And if a condition of release is violated, the

14  Defendant may be sentenced to up to two years without credit

15  for prerelease imprisonment.

16       There's no restitution in this case.

17       There's obviously a $100 special assessment as to

18  the sole count.

19       And, finally, we expect an order of forfeiture to be

20  filed related to certain devices that were seized from the

21  Defendant as well as other items that the Defendant was

22  attempting to pick up at a locker that was going to be used in

23  the knife attack.

24       THE COURT:  Any questions about what the Government

25  just said?

Proceedings                                        15

1        THE DEFENDANT:  No, I don't think so.

2        THE COURT:  Mr. Jacobson, is there anything you'd

3    like to add to the description of the possible penalties?

4        MR. JACOBSON:  No, your Honor.  Thank you.

5        THE COURT:  Let's talk for a moment about penalties

6    and sentencing.

7        I mentioned earlier that if you plead guilty today,

8    you'll be doing so without knowing for sure what your

9    guideline range will be or what your sentence will be; do you

10   understand that?

11       THE DEFENDANT:  I understand it.

12       THE COURT:  And there are a number of factors that

13   the Court considers in deciding how to sentence you.  So,

14   Judge Amon will calculate your guideline range after hearing

15   from the Government, the probation department, and your

16   lawyers and will determine whether or not it's fair to

17   sentence you within the guidelines, above the guidelines, or

18   below the guidelines.  In other words, the guidelines are just

19   advisory, they're just an aid to help guide Judge Amon in

20   sentencing you, but they're not binding.  So, she can depart

21   from the guidelines under certain circumstances.

22       Have you had a chance to discuss that concept with

23   your lawyers?

24       THE DEFENDANT:  Yes.

25       THE COURT:  Any questions about what I've said so

Proceedings                                    16

1    far?

2                    THE DEFENDANT:  No.

3                    THE COURT:  So, in addition to the guidelines, there

4    are a number of other factors in 18 United States Code 3553

5    that Judge Amon has to consider.  I'm sure your lawyer has

6    explained them to you, but I'm just going to go over them in

7    case you have any questions.

8                    The first is the nature and circumstances of the

9    charge and the history and characteristics of you -- in other

10   words, basically, what your criminal history and other history

11   would be -- the need for the sentence imposed to reflect the

12   seriousness of the offense, to promote respect for the law,

13   and to provide fair punishment for the offense; the need for

14   the sentence to afford adequate deterrence to criminal

15   conduct; to protect the public from further crimes that you

16   might commit; and to provide you with needed educational or

17   vocational training, medical care, or other correctional

18   treatment in the most effective manner.

19                    I'm just reading from the statute.  Any questions

20   about what I just said?

21                    THE DEFENDANT:  No.

22                    THE COURT:  So, once again, there's no guarantee

23   what your sentence will be or what your guidelines will be.

24                    Also, we do not have parole in federal court.  In

25   the state court system, there is the possibility of early

Proceedings                                                           17

1   release on parole.  We don't have that.

2          Do you understand that?

3          THE DEFENDANT:  Yeah.

4          THE COURT:  So, I'm going to ask the Government what

5   it's prepared to prove if this case went to trial.

6          MR. ALGOR:  Yes, your Honor.

7          The Government would be prepared to prove, through

8   both witnesses as well as documentary evidence and electronic

9   evidence, that the Defendant, in late August of 2019, started

10  to communicate with what he believed to be pro-ISIS accounts

11  online and discussed planning to conduct a knife attack in

12  Queens, New York; specifically, the promenade in the World

13  Fair's Marina vicinity; that he conducted surveillance and

14  provided surveillance videos of the area that he intended to

15  attack; and that he also ordered with what turned out to be

16  online undercovers certain items that he was -- going to be

17  used in this knife attack, to include a knife, tactical gear,

18  and a harness that he would use to film the attack; he pledged

19  allegiance to ISIS in those communications as well as sent

20  propaganda of ISIS; and that there's additional electronic

21  evidence found in Defendant's computer and phones that shows

22  chockful hundreds of thousands of videos and other material

23  related to ISIS; that the Defendant knew that ISIS was either

24  a foreign terrorist organization or that they conducted

25  terrorist attacks.

```
                        Proceedings                    18
```

1        So, that would be the bulk of the evidence.  And

2   then, obviously, that it happened in the Eastern District of

3   New York.

4            THE COURT:  Thank you.

5            Is there anything that the defense would like to say

6   at this point?

7            MR. JACOBSON:  No, your Honor.

8            THE COURT:  Mr. Chudhary, are you ready to plead?

9            THE DEFENDANT:  Yes, I am, your Honor.

10           THE COURT:  Mr. Jacobson, is there any reason why

11  your client should not plead guilty at this time?

12           MR. JACOBSON:  Your Honor, we have discussed a

13  number of legal defenses with Mr. Chudhary but have decided

14  that the current course is the best option for him today as

15  opposed to asserting those defenses at trial.

16           THE COURT:  Mr. Chudhary, as to the charge in the

17  indictment of attempted provision of material support to a

18  foreign terrorist organization, how do you plead, guilty or

19  not guilty?

20           THE DEFENDANT:  I plead guilty.

21           THE COURT:  Are you pleading guilty voluntarily?

22           THE DEFENDANT:  I am.

23           THE COURT:  Has anyone forced you threatened you or

24  made you any promises to induce you to plead guilty?

25           THE DEFENDANT:  They haven't.

Proceedings                                    19

1      THE COURT:  Has anyone promised you what your

2  sentence will be?

3      THE DEFENDANT:  No one did.

4      THE COURT:  So, I'm going to ask you if you could

5  explain to me what it is that you did that makes you guilty of

6  this charge.

7      MR. JACOBSON:  Your Honor, we'll proceed by proffer,

8  and Mr. Chudhary can confirm the veracity of that proffer

9  afterwards.

10     THE COURT:  Any objection from the Government?

11     MR. ALGOR:  If you stipulate, I think if the

12 Defendant is reading off of something that he worked out with

13 his attorney, he can do so and he can read that in.  I don't

14 think we need Mr. Jacobson making the representations, we need

15 to hear from the Defendant himself.

16     MR. JACOBSON:  I don't think it's necessary for

17 Mr. Chudhary to make the statement.  He'll agree to the facts

18 that I put forward in the proffer.

19     THE COURT:  Why don't we start with you?

20     And if Mr. Algor feels that there's anything else,

21 he can ask me.

22     MR. JACOBSON:  Thank you, Judge.

23     As the Government stated, the evidence in this case

24 shows that in August of 2019, Mr. Chudhary communicated with

25 undercover FBI agents on an online social media platform.  The

Proceedings                                    20

1   undercover agents were posing as ISIS supporters and

2   Mr. Chudhary expressed to the agents his desire to provide

3   support to ISIS in the form of personnel.

4        In addition to communicating with the undercover

5   agents regarding plans to provide support, at the direction of

6   the agents Mr. Chudhary took videos of various potential

7   locations in Queens, New York, and at the agents' direction

8   sent them the videos.

9        Mr. Chudhary, is everything I've said so far

10  accurate?

11       THE DEFENDANT:  Yeah.

12       MR. JACOBSON:  And at the time, did you know that

13  ISIS was a foreign terrorist organization?

14       THE DEFENDANT:  Yes.

15       MR. JACOBSON:  We think that's sufficient, Judge.

16       THE COURT:  Mr. Algor?

17       MR. ALGOR:  Your Honor, I don't think that they've

18  met the substantial step in that he stopped short of the

19  additional piece where he went to pick up the items to conduct

20  the knife attack that he had ordered.

21       And, so, it seems that Mr. Jacobson is trying to

22  cabin off just at the surveillance, and I don't think that

23  he's -- he's met a substantial step.

24       MR. JACOBSON:  Your Honor, I think that will be a

25  question at sentencing.  I think the Second Circuit case law,

Proceedings                                    21

1    however, is extremely clear that surveilling or doing

2    reconnaissance at potential locations or targets is more than

3    a substantial step under the circuit case law.

4          MR. ALGOR:  Your Honor, I'm not disagreeing with

5    that, but I would ask that the Defendant stipulates to the

6    fact that the Defendant did take -- did go to the locker to

7    pick up items, including a knife and other material, that he

8    had ordered with the online undercovers.

9          MR. JACOBSON:  I think that goes far beyond what's

10   necessary for the plea colloquy.  I can say that we don't

11   dispute that he went to that location, but he doesn't need to

12   stipulate to that.

13         THE COURT:  Let's start with the basic elements

14   again.  Read your first sentence.

15         MR. JACOBSON:  In August of 2019, your Honor,

16   Mr. Chudhary communicated with undercover FBI agents on an

17   online social media platform.  Those agents were posing as

18   ISIS supporters and Mr. Chudhary expressed to the agents his

19   desire to provide support to ISIS.

20         THE COURT:  Stop there.

21         MR. JACOBSON:  That covers the intent element.

22         THE COURT:  Stop right there.

23         Mr. Chudhary, did you hear what your lawyer said?

24         THE DEFENDANT:  Yeah.

25         THE COURT:  Is what he said true?

```
                        Proceedings                    22
```

 1          THE DEFENDANT:  Yeah.

 2          THE COURT:  Can you tell me in your own words what

 3   it was that you did that your lawyer just -- explain it to me.

 4          THE DEFENDANT:  Like, under their agent, they told

 5   me to take reconnaissance of places, like, film.  That's what

 6   the agent told me to do.  And I did that.

 7          THE COURT:  And what was the purpose of doing that

 8   for them?

 9          THE DEFENDANT:  I mean, that's, like -- it ended up,

10   like, it could have been used in support of ISIS.

11          THE COURT:  Was that surveillance reconnaissance

12   intended to be a step towards an attack that would have

13   been -- that you would have conducted in support of ISIS?

14          MS. HIROZAWA:  Your Honor, may we have a moment?

15          THE COURT:  Sure.

16          (Defendant and his counsel confer.)

17          THE DEFENDANT:  At the time, that was my

18   understanding of the agents' request and pressure, yeah.

19          THE COURT:  Was that your understanding as well?

20          THE DEFENDANT:  Yeah.

21          THE COURT:  And did you think that the plan that you

22   developed with the agents was in support of the goals of ISIS?

23          THE DEFENDANT:  Yeah, the agents, the plan that was

24   being presented, and the pressure was, yeah, for that.

25          THE COURT:  I don't know if your mic is on.  I can't

Proceedings                                23

1    really hear you.

2         THE DEFENDANT:  Yeah, under the agents', like,

3    direction and pressure, yeah -- yes.

4         THE COURT:  So, you thought when speaking to the

5    agents you were speaking with ISIS, essentially?

6         THE DEFENDANT:  No.

7         THE COURT:  No.

8         MS. HIROZAWA:  ISIS supporters, your Honor.

9         THE COURT:  Supporters.

10        Okay.  And did you know that ISIS was a designated

11   terrorist organization?

12        THE DEFENDANT:  Yes.

13        THE COURT:  And did you know that ISIS had engaged

14   in terrorist activity as defined under federal law?

15        MR. JACOBSON:  It's sufficient that he knew that it

16   was a designated foreign terrorist organization, Judge.

17        MR. ALGOR:  We agree with that, your Honor.

18        THE COURT:  And did you discuss with the agents a

19   plan for carrying out terrorist activity?

20        THE DEFENDANT:  That's what was being discussed with

21   the agents.

22        THE COURT:  I'm sorry, I couldn't hear that.

23        MR. JACOBSON:  He said that's what was being

24   discussed with the agents.

25        MR. ALGOR:  Your Honor, if we could just ask that

Proceedings                                              24

1    the defense stipulate that he told the undercover that he

2    wanted to conduct a knife attack and then subsequently sent

3    surveillance videos, I think that would clarify a lot of this.

4              MR. JACOBSON:  We agree that's what the evidence

5    shows.

6              THE COURT:  Is that correct, Mr. Chudhary?

7              THE DEFENDANT:  On the apparent, yes, but

8    underlying...

9              (Pause in proceedings.)

10             THE DEFENDANT:  On the surface, yes, but underlying

11   there was more to it in terms of, like...

12             MR. ALGOR:  Your Honor, we'd ask either the defense

13   stipulates to that or he doesn't.

14             THE COURT:  Repeat again what it is.

15             MR. ALGOR:  Yes, your Honor.

16             When the Defendant initially started to communicate

17   with what he believed to be a pro-ISIS supporter account, that

18   he said he wanted to commit a knife attack in Queens, and then

19   subsequently sent surveillance videos following that.

20             MR. JACOBSON:  I've already asked him that question

21   twice and he said yes.

22             THE COURT:  So, the defense is stipulating to that

23   and the Defendant has testified to that.

24             MR. JACOBSON:  Yes, Judge.

25             MR. ALGOR:  We have nothing further.  We think

Proceedings                                          25

1    that's adequate under the statute.

2            THE COURT:  Is there anything else the defense would

3    like to say?

4            MR. ALGOR:  No, your Honor.  Thank you.

5            THE COURT:  Mr. Chudhary, I find that you're acting

6    voluntarily; that you fully understand your rights, the

7    charges against you, the rights you're giving up by pleading

8    guilty; the consequences of the guilty plea, including

9    possible sentence, fine, and other penalties; I find that you

10   understand that there's no guarantee what your sentence will

11   be at this time or even what the guideline range will be; and

12   I find that there's a factual basis for the plea, that you

13   did, in fact, satisfy the elements of the offense set forth in

14   18 U.S. Code 2239(b), and I, therefore, recommend that

15   Judge Amon accept your plea of guilty to the charge.

16           THE DEFENDANT:  Okay.

17           THE COURT:  Is there anything else from the

18   Government?

19           MR. ALGOR:  Not from the Government, your Honor.

20           THE COURT:  From the defense?

21           MR. JACOBSON:  No, your Honor.  Thank you, Judge.

22           THE COURT:  So, the next step will be that the

23   probation department will be drafting a presentence

24   investigation report, and that will be going into factors that

25   could be helpful to you as well as helpful to the Government.

Proceedings                                    26

1  You have a right to have your lawyer present when you're

2  interviewed by the probation department and to make

3  submissions to the Court if in any way you disagree with what

4  the report says.

5              THE DEFENDANT:  Okay.

6              THE COURT:  Okay.  Thank you.  That concludes the

7  proceedings.

8

9              (Matter concluded.)

10

11                        ooo0ooo

12

13   *I (we) certify that the foregoing is a correct transcript*

    *from the record of proceedings in the above-entitled matter.*

14

15       */s/ Linda A. Marino*              *August 29, 2022*
          *LINDA A. MARINO*                    *Date*

16

17

18

19

20

21

22

23

24

25

*Linda A. Marino, Official Court Reporter*